Good morning. Elizabeth Falk on behalf of Mr. Mendoza-Prado, Petitioner. In this matter, the District Court abused its discretion by failing to hold an evidentiary hearing on Petitioner's habeas claim that he was prejudiced by his counsel's failure to advise him that there was a superseding indictment that would come down if he did not accept a plea. The District Court abused its discretion in two ways. First, by assuming that the District Court would disbelieve Petitioner about his prejudice claim simply because he had disbelieved Petitioner in the past. The second way the District Court abused its discretion was basing its legal conclusion that no hearing was required and that the petition could be denied on four factors that were either unsupported or contradicted by the written record or factually and legally insufficient bases to disbelieve Petitioner's declaration and reject his claim. Now, under United States v. Shaw and Section 2255, a hearing must be granted unless the motion, files, and record of the case show conclusively that the petitioner is not entitled to relief, and especially when occurrences that are stated in a habeas petition are based outside the record. In those cases, it's especially important for a District Court to hold a hearing. This claim that remains boils down to what transpired between counsel and Petitioner at the time he was considering the plea. Well, was there a proffer made to Judge Breyer as to what the evidence would be, or how did the – what does the record show on that? The record showed there were three declarations that were submitted, and as this Court is aware, this issue was remanded from the Ninth Circuit on this point. There were three declarations submitted on behalf of Petitioner on the prejudice prong. The Court felt that the record was conclusive as to the deficient performance prong because he'd already held an evidentiary hearing where trial counsel couldn't remember if she'd told him that there was going to be a superseding indictment. Petitioner told her that – told the Court that she had not. And on the prejudice prong, Petitioner submitted a declaration that said, I didn't know that I was looking at a 10-year mandatory minimum if I rejected the plea offer. If I had known that, that would have been sufficient to sway me into accepting the offer. There were also two declarations that Petitioner was looking for a plea offer at the time that he was considering this – this situation. One of them was from a co-defendant who ended up taking the offer, who basically wrote that my client, Petitioner, felt that his trial defense was not very good and that the evidence was bad against them, and that he had told Mr. Contreras that he was looking for an offer. What was the sentence he got? Excuse me? What was the sentence he got, actually? 127 months. Didn't Judge Breyer assume the facts set forth in these two declarations by Contreras and Teck to be true? And didn't he find that they made no difference and did not provide support for the Petitioner's argument? He found them true to some extent, is the exact quote. And that's from the oral hearing on the motion. And what Judge Breyer basically said is they show that it supports the notion that he was looking for a plea, but there's no corroborative evidence as to whether or not Mr. Mendoza would have accepted the plea, specifically if he'd known about the mandatory minimum. But that was an abuse. To the extent that he accepted the declarations as true and then ruled against Petitioner and ruled against the need for an evidentiary hearing, that was an abuse of discretion. Because the declaration of Mr. Contreras, if accepted as true, showed that Petitioner was not excited about going to trial at all and thought the evidence was bad. But in the written order, the judge then said, one of the reasons that I'm denying the petition is because Petitioner had great confidence in his trial defense. So it's as if he read the declaration, accepted it as true, but then drew an opposite  It's not as if he hadn't seen. It's not as if he was unfamiliar with the defendant, was it? That is true. He had heard him at trial. He had heard him at the course of an evidentiary hearing. But when someone is confident by the time they go to trial in their trial defense, at that point the decision has been made, and you have to gear up and be energetic at that point. Judge Breyer did not, was not aware of what Petitioner's state of mind was about a potential plea offer. He had never heard from Petitioner on that issue. And he did find him to not be credible in his earlier hearing testimony, but that was on issues that were very different than the situation with a plea offer. And that, to claim to accept those supporting declarations and yet draw opposite conclusions in a legal or written order, that was part of the way that the district court abused its discretion in this case. Now, the district court did not resort to what I'm going to ask you about, at least I don't recall. The sentence was 127 months. That's right. So it exceeded what would be the statutory minimum by seven months. That's right. Under the indictment, as it was before the superseding indictment, he could have gotten that same sentence, could he not? He could have. And the fact that the district judge, in imposing the sentence, did not impose a sentence that corresponds with the mandatory minimum, doesn't that further suggest that it didn't make much difference? Because the man was before the Court for what he'd done. He was subject to 127 months under either indictment, and that's what he got. That is true, but that's not the standard on this habeas claim, because what's important is what Petitioner knew and what his state of mind was at the time that the plea was conveyed. So the fact that ultimately it didn't really matter doesn't change the fact that knowing pre-plea that a 10-year mandatory minimum sentence awaits you when you think you're only looking at a 5-year mandatory minimum sentence at the time, that's sufficiently enough to make someone think twice about going to trial. Well, I realize that, but the second prong of Washington is prejudice. That's right. And the prejudice is occurred in its the question is would he have made a different decision? I realize that's the way the district court looked at it, and you're saying that's the proper criteria and we should not resort to this collateral discussion. Yes. In fact, the district court took your approach in the first order, and that's the reason it was remanded. All right. So that's why we're here. We did it. The other reasons relied on by the district court, such as the fact that petitioner was aware that he was going to be looking at potentially 40 years or petitioner would potentially knew that he could face more time, those are factually and legally insufficient to deny petitioner's claim on this record without a hearing. Because the fact that someone might be looking at 40 years, the possibility of 40 is a far different cry than the surety of a 10-year mandatory minimum. And the district court did not give any weight in its order to the power that mandatory minimums have on the plea negotiation process. Well, but he knew this defendant, I guess that's, and he knew of this defendant's, he had a basis for knowing this defendant's confidence in his defense, didn't he? At trial. Yeah. But so many people, it's important to get into that mindset by trial. If you're not confident in your trial defense by trial, you've got a real problem. And two months earlier when he was looking at this plea, that's a fairly long time to work with counsel and try to get excited about a defense. So the district court would have only seen him as really first interaction with Mr. Mendoza-Prada was at that trial. And I'd like to reserve the rest of the time for rebuttal. Thank you. May it please the Court. Good morning. My name is Lori Gray. I represent the United States. The flaw with defendant's argument is that defendant was never going to plead guilty to anything more than five years, and that was based on his belief that he had a strong entrapment defense. The district court made four specific findings. I would submit to the Court that none of those are clearly erroneous, and the defendant has failed to meet his burden of proof of prejudice. But with regard to the Court's third finding, that goes to the issue of his entrapment defense. And the Court says, this is at the excerpt of Record 6, third, the Court notes that Petitioner's claim to prejudice is not credible in light of the confidence he displayed in his defense before trial. Petitioner's genuine belief in the possibility of success at trial, which this Court distinctly recalls from the underlying proceedings, belies his ex post assertion that he would have taken the deal that was offered to him if only he had known more about it. And, indeed, at the January motions hearing, the oral argument, counsel said, well, it was just ludicrous that he wouldn't take this deal, and the Court responded to that in excerpt of Record 48. He said, this is the district court speaking, I sat through the trial. I'll tell you exactly why he did it if you say it's irrational. He thought he had an excellent entrapment defense. That's what he thought. There's no question he thought that. I heard him testify. I heard the argument. He thought he had an excellent entrapment defense. And so it does not make any difference to him the way he viewed it. He was entrapped, whether it was 30 kilograms or 5 kilograms or 10 kilograms. It wasn't irrational. If he had an entrapment defense that succeeded, he'd walk out of here. That's a rational decision. So, Your Honors, I submit that there's no doubt now that defendant would have taken the deal if he'd known of the result of trial. But the facts on the record demonstrate that pre-trial, he was not going to take anything more than 5 years' leave. Kagan. Was the district court talking about him, or was the district court referring to both him and his counsel? I think referring to him in the sense of the entrapment defense, that it didn't matter the amount, because he was secure in his entrapment defense. And the district court had seen him testify, had judged his credibility. And for that reason, I think that finding that he was secure in his entrapment  Sotomayor, that's not a very rational belief, though, is it? By defense. How many, yeah, how many entrapment defenses do you say? The district court actually said he thought that. It was what he thought. Right. It was what he thought. And that was the reason that I would submit that defendant now cannot prove prejudice, because he was never going to take more than 5 years, so he certainly wasn't going to plead to 10. Well, but isn't it generally our experience that people behave differently in negotiation when they know that something is achievable? You can talk about things in the abstract when you're negotiating, and it gets pretty easy to say no until something is on the table. Well, the And he never had, apparently, he never had this offer squarely presented to him. With the realization that all he had to say was yes in order to get the deal. Your Honor, I'd ask you to take a look at the full record in this case in which this defendant has changed his story as the facts have changed. Defense counsel offered these declarations for the idea that he was looking for an offer, not that he was going to take the offer, but that he was looking for the offer. That argument is a two-edged sword. He may have behaved differently, too. You say he said some different things, depending on the circumstances. We have to assume that the trial court, or we have to find the trial court is correct in its finding a fact that this man would have behaved in a certain way no matter what his options were. And the court found that he would have behaved that way, would have not taken the 10-year deal, and he evaluated, the district court evaluated the defendant's credibility. And I think it's significant to note that in defendant's first habeas petition filed in 2003, he says he was never told by the government that he'd been offered a plea agreement. He then files a traverse in April of 2003 in which he says he stands firm on all of his initial claims. Petitioner was never informed about the plea agreement. Then there's the evidentiary hearing, a two-day evidentiary hearing, after his counsel testifies that she and defendant had discussed and met three times for five hours to discuss a plea agreement. Defendant suddenly, who had previously stood firm on all these charges, says that he had, in fact, been informed of a five-year deal. As the district court noted, defendant's story changed and evolved with each set of facts, and that if, in fact, the superseding indictment had been something of such a surprise and would have impacted his decision, he would have filed it initially, not four years after that initial habeas petition, Your Honor. And with that, if there are no further questions, I would submit this matter to the Court and ask that you affirm the district court. Thank you. Thank you. In the first part of my argument, I covered the confidence issue, that confidence at trial and how someone acts after trial is not indicative of how they were acting two months before when they were considering a plea offer. As far as clarifying the record that counsel just referred to, Mr. Mendoza-Prado's habeas petition was written by a co-defendant. And the petition he actually took — not a co-defendant, I'm sorry. It was a fellow inmate who actually knew English. Mr. Mendoza-Prado was not literate, not able to speak to — he was able to speak limited English and understand limited English, but not to write English. And his position throughout has been that he did not understand this offer. He didn't understand it as a five-year offer. He didn't understand it as a 57-to-7, one-month offer. He understood that he had an offer to plead guilty, and if he went to trial, he'd get more time, possibly a lot more time. But it was not explained in terms of these concrete issues like mandatory minimums that we're discussing here. What's the remedy here? The remedy that we request would be a remand to the district court for an evidentiary hearing on this matter. But suppose that he wins everything. What does he get? He would get, well, under current law, the benefit of the plea offer that was extended, which is a 57-to-71-month offer. And I would ask the Court, because he's being released in 2009, in the middle of 2009, he's basically served almost all of that time. So that's what we're seeking as a remedy. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, the first case that's listed on the calendar, Eidenbach v. Schwab.
judges: Schroeder, Leavy, Fairbank